NAMISH PARIKH,                    *

     Plaintiff,                    *

v.                                               *          Case No.: GJH-17-0332

HON. BRIAN FROSH,                *

     Defendant.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Namish Parikh brings this action *pro se* against Defendant Hon. Brian Frosh, in his official capacity as Attorney General of Maryland, challenging the constitutionality of the Maryland prejudgment attachment statute, Md. Rule 2-115, under the due process clause of the Fourteenth Amendment and the Fourth Amendment. Presently pending before the Court is Plaintiff's Motion for a Preliminary Injunction, ECF No. 4, Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 7, and Plaintiff's Motion for Leave to File Surreply, ECF No. 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is granted, Plaintiff's Motion for Leave to File Surreply is denied, and Plaintiff's Motion for a Preliminary Injunction is denied.

## I.    BACKGROUND

This case concerns the financial assets of Plaintiff's late father, Dinesh O. Parikh, and a legal dispute that resulted over those funds. ECF No. 1 ¶ 10; ECF No. 5-2 at 2.[1] Plaintiff's father

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system. The Court takes judicial notice of the content of state court records pursuant to Fed. R. Evid. 201(b)(2). *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

died on June 18, 2016. ECF No. 1 ¶ 10. The father's Last Will and Testament was docketed in

the Register of Wills Office for Montgomery County, Maryland (Estate #W87973). *Id.* ¶ 11. The

terms of the Last Will named Plaintiff's ex-wife, Oxana Parikh, as the Executor and sole

beneficiary of Plaintiff's father's property and assets. *Id.* ¶ 12. On June 22, 2016, the Register of

Wills appointed Oxana Parikh as the Personal Representative, or Executor, of the Estate.

Plaintiff's sister, who had been apparently disinherited in the will, filed a Petition to Remove the

Personal Representative and a Petition to Caveat the Last Will on July 11, 2016 in the Orphans'

Court for Montgomery County. *Id.* ¶ 14. The Orphans' Court held a hearing on September 9,

2016. *Id.* ¶ 17. The Orphans' Court removed Oxana Parikh as Personal Representative and

appointed Lynn Claude Boynton, also known as Lynn C. Pendleton, ("Boynton"), as Special

Administrator of the Estate. *Id.*

On October 6, 2016, Boynton filed a verified complaint under oath against Plaintiff and

his ex-wife in the Circuit Court for Montgomery County, Maryland. ECF No. 1 ¶ 21; ECF No. 5-

2 at 2–23; *see Boynton v. Parikh*, Case No. 425847 V (Cir. Ct. Prince George's Cty. 2016). That

same day, Boynton also petitioned the duty judge, *ex parte*, for an Order of Attachment. *Id.* ¶ 24;

ECF No. 5-3 at 2–10. Boynton moved pursuant to Md. Code, Cts. & Jud. Proc. § 3-303(e), which

prescribes that an attachment before judgment may issue "[i]f the debtor is about to assign,

dispose of, conceal, or remove his property or a portion of it from the State with intent to defraud

his creditors . . ." § 3-303(e)(1). *See* ECF No. 5-3 at 5.[2] The judge granted the Order of

Attachment, freezing and seizing the Ally Bank accounts of Plaintiff and his ex-wife. ECF No. 1

¶ 24; ECF No. 5-4 at 2–4. Allegedly, Boynton was not required to post a bond to obtain the

Attachment, as it was waived by the court, and no hearing was held before the Attachment

---

[2] As this is a Motion to Dismiss, the Court does not include Defendant's allegations as to the fraudulent conduct perpetuated by Plaintiff and his ex-wife.

issued. ECF No. 1 ¶¶ 24, 28. Plaintiff claims that he was not notified about the Attachment. *See* ECF No. 1 ¶ 52; ECF No. 10 at 25. He further complains that no post-deprivation hearing was scheduled. ECF No. 1 ¶ 57. Pursuant to a joint consent motion filed by Boynton and the Parikhs, the $1,140,000 in seized funds were held by the Registry of the Circuit Court for Montgomery County. ECF No. 5-5 at 2–4.[3]

Plaintiff filed the instant Complaint in this Court against Brian Frosh, in his official capacity as Attorney General for the State of Maryland, seeking declaratory and injunctive relief. ECF No. 1.[4] Specifically, Plaintiff requests that the Court "[i]ssue a declaratory judgment finding that the seizure/attachment by the State unconstitutionally injured Plaintiff and is unlawful," "[p]ermanently enjoin the Defendant from seizing, freezing or holding, any assets belonging to Plaintiff under the State's prejudgment attachment program," and "[o]rder the State authorities to adopt a new prejudgment attachment program without the constitutionally offensive features of the current program." ECF No. 1 at 18. Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment. ECF No. 7. Defendant contends that the case is subject to dismissal based upon the *Rooker-Feldman* doctrine, *Younger* abstention, and because the Maryland prejudgment attachment statute is not unconstitutional. The Court will address each issue.

## II.    STANDARD OF REVIEW

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006). Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve,* 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd,* 85 F.

---

[3] Since the filing of this action, the underlying state case has been closed but remains pending on appeal and is, thus, unresolved. ECF No. 15.
[4] Plaintiff also filed a Motion for a Preliminary Injunction, ECF No. 4, addressing the same issues resolved here.

App'x 960 (4th Cir. 2004). Once a challenge is made to subject matter jurisdiction, the Plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010) (citing *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008)). The Court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss under Rule 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The facts "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court accepts factual allegations in the complaint as true and construes the factual allegations in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private*

*Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

### III.  ANALYSIS

#### A.  Rooker-Feldman

The *Rooker-Feldman* doctrine bars federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine springs from the principle that "[j]urisdiction to review such state court decisions lies exclusively with superior state courts, and ultimately, the United States Supreme Court." *Plyer v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997). *Rooker-Feldman* stops "lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). An issue is "inextricably intertwined" when it "was not actually decided by the state court but where success on the . . . claim depends upon a determination that the state court wrongly decided the issues before it." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000). The doctrine is jurisdictional; thus, the Court is "obliged to address it before proceeding" to the merits of a given case. *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002).

However, *Rooker-Feldman* is "narrow and focused," and stands only for the proposition that "lower federal courts are precluded from exercising appellate jurisdiction over final state-

court judgments." *Thana v. Bd. of License Commissioners for Charles Cty., Maryland*, 827 F.3d 314, 319 (4th Cir. 2016). To emphasize the narrow role of *Rooker–Feldman*, the Supreme Court has repeatedly noted that it has not applied the doctrine since the decisions in *Rooker* and *Feldman. See, e.g., Skinner v. Switzer*, 562 U.S. 521, 531 (2011); *Lance v. Dennis*, 546 U.S. 459, 464 (2006); *Exxon*, 544 U.S. at 287 (2005). Since *Exxon*, the Fourth Circuit also has not, in a published opinion, held that a district court lacked subject matter jurisdiction under *Rooker–Feldman. See Thana*, 827 F.3d at 319.

Indeed, the doctrine does not apply "if a plaintiff in federal court does not seek review of the state court judgment itself but instead presents an independent claim that is related to a matter decided by a state court." *Torkornoo v. Helwig*, No. 16-1650, 2016 WL 7156586, at *1 (4th Cir. Dec. 8, 2016). In *Thana*, plaintiffs had been denied an alcoholic beverage license by the Board of License Commissioners of Charles County. *Thana*, 827 F.3d at 317. The Circuit Court for Charles County affirmed the Board's decision and the Maryland Court of Appeals subsequently affirmed. *Id.* Before filing an appeal with the Maryland Court of Special Appeals, Plaintiffs filed a § 1983 action in federal court, alleging that the Board's policies violated its First Amendment rights. *Id.* at 318. After the district court had concluded it lacked subject matter jurisdiction under *Rooker-Feldman*, the Fourth Circuit reversed, reasoning that the federal action was "a concurrent, independent action supported by original jurisdiction conferred by Congress on federal district courts, even though the complaint in the action includes claims and legal arguments similar or the same as those made in the state proceedings." *Id.* at 321. It further held that the doctrine did not apply because "the district court here was not called upon to exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which a decision could be had,' 28 U.S.C. § 1257(a) . . . as was the case in both *Rooker* and *Feldman*." *Id.* Thus,

6

there could be no attempt by plaintiffs to flout Supreme Court jurisdiction because there had been no final state court judgment from which to appeal to the Supreme Court. *See id.*

*Rooker-Feldman* is also not applicable here, at least to the extent Plaintiff challenges the prejudgment attachment statute itself. Plaintiff seeks not to appeal a state court *judgment*, nor does he seek to appeal an interlocutory order as claimed by Defendant. *See* ECF No. 7-1 at 7 (citing *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir. 2000) (holding that *Rooker-Feldman* applies to both final and interlocutory orders)). Five years after the Fourth Circuit decision in *Brown & Root*, the Supreme Court clarified in *Exxon–Mobil* that "the *Rooker–Feldman* doctrine is confined 'to cases brought after the state proceedings have ended.'" *Mann v. Boatright*, 477 F.3d 1140, 1146 (10th Cir. 2007) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). *Rooker-Feldman* does not apply to federal court actions proceeding in tandem with on-going state court actions. *See Exxon Mobil Corp.*, 544 U.S. at 292 (2005); *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that *Exxon-Mobil* abrogated much of the prior case law on *Rooker-Feldman* and stating that the doctrine "has no application to federal-court suits proceeding in parallel with ongoing state-court litigation").

At the time of the filing of this Complaint, *Boynton v. Parikh*, had not produced a final, appealable judgment from which to appeal to the Supreme Court. The Maryland Court of Appeals has held that a ruling must have the following three attributes to be considered a "final judgment": (1) "it must be intended by the court as an unqualified, final disposition of the matter in controversy," (2) "it must adjudicate or complete the adjudication of all claims against all parties" unless "the court acts pursuant to Maryland Rule 2–602(b) to direct the entry of a final judgment as to less than all of the claims or all of the parties," and (3) "it must be set forth and

recorded in accordance with Rule 2–601." *Metro Maint. Sys. S., Inc. v. Milburn*, 442 Md. 289, 298 (2015); *see* Md. Code, Cts. & Jud. Proc. § 12-301. To constitute an "unqualified, final disposition, an order of a circuit court must be so final as either to determine *and conclude* the rights involved or to deny the appellant the means of further prosecuting or defending his or her rights and interests in the subject matter of the proceeding." *Id.* at 299 (emphasis in original). The order need not resolve the merits of the case, but it must have the effect of "putting the party out of court." *Id.* (internal citations omitted).

With respect to interlocutory orders, or orders that do not dispose of all the claims against all parties, such orders are immediately appealable only under three narrow exceptions to the final judgment rule: (1) "appeals from interlocutory orders specifically allowed by statute"; (2) appeals certified under Maryland Rule 2–602; and (3) "appeals from interlocutory rulings allowed under the common law collateral order doctrine." *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 566 (2010). Under the first exception, Md. Code, Cts. & Jud. Proc. § 12-303(2) provides that a party may appeal from "[a]n order granting or denying a motion to quash a writ of attachment," but as the Montgomery County Circuit Court here had not, as of the time of the filing of this Complaint, ruled upon a motion to quash, this exception is inapplicable to this case. Second, no appeal has been certified under Rule 2-602. Third, the collateral order doctrine "permits premature appeals" only from "a *limited* class of cases." *Schuele*, 412 Md. at 572 (emphasis added). These include an interlocutory order that "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, *and* (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *Id.* (emphasis in original).

The prejudgment attachment ordered by the Circuit Court was not an unqualified, final disposition of the matter in controversy, nor did it conclusively determine a disputed question. Indeed, prejudgment attachment by its very nature invites further prosecuting or defending of the rights and interests involved in the subject matter of the proceeding. Failure to do so results in the dissolution of the attachment or disposition of the property. *See* Md. Rule 2-115(i)-(k). Viewed in this context, Plaintiff cannot be considered a "state court loser." *See Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) (plaintiff not a "state court loser" for *Rooker-Feldman* purposes where state court had issued an order temporarily removing plaintiff's child after an *ex parte* emergency hearing). The issue presented also cannot be considered "inextricably intertwined" because Plaintiff's success on the claim does not depend on this Court's determination that the state court was "wrong." Preventing review of such a prejudgment attachment is not contemplated by the principles of *Rooker-Feldman*, which merely restricts federal courts from exercising appellate jurisdiction over state court judgments.

Even if Plaintiff's as-applied challenge to the state court attachment were barred as an unreviewable interlocutory order, Plaintiff also clearly makes a facial challenge to the constitutionality of the underlying prejudgment attachment statute, which is an independent claim not barred by *Rooker-Feldman. See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (noting that "[c]hallenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States District Court to review a final state court judgment"). As the court in *Willner* noted:

> The rationale of *Feldman* makes clear that . . . whether [plaintiffs] may bring their claims in federal district court depends on whether their challenge to [the state] . . . statute is facial or as-applied. If the former, then it may proceed, because the plaintiffs would then be challenging an act of the . . . state legislature. But if the latter, then it is barred by the *Rooker–Feldman* doctrine because the

constitutional challenge is 'inextricably intertwined' with the state court's judgment.

*Willner v. Frey*, 421 F. Supp. 2d 913, 922–23 (E.D. Va. 2006), *aff'd*, 243 F. App'x 744 (4th Cir. 2007). Here, while Plaintiff has requested that this Court "issue a declaratory judgment finding that the seizure/attachment by the State unconstitutionally injured Plaintiff and is unlawful," ECF No. 1 ¶ 57(A); Plaintiff has also moved the Court to "[o]rder the State authorities to adopt a new prejudgment attachment program without the constitutionally offensive features of the current program," *id.* ¶ 57(C). Therefore, his challenge to the prejudgment attachment statute is an objection to the Maryland statute itself, rather than simply an attack on a state court judgment; and thus it falls squarely within this Court's jurisdiction. *Cf. Exxon Mobil Corp.*, 544 U.S. at 292 ("But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.").[5]

## B. Younger abstention

The doctrine of *Younger* abstention, *Younger v. Harris*, 401 U.S. 37 (1971), prevents a federal court from interfering in certain parallel, pending state proceedings. *See Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 586 (2013). The case of *Younger* itself dealt with an ongoing state criminal prosecution. Since *Younger*, the Supreme Court "has extended *Younger*

---

[5] The Court clarifies that it exercises jurisdiction only over the constitutional question presented in the Complaint, ECF No. 1 at 18–19, namely whether the Maryland prejudgment attachment statute comports with the Due Process Clause. Plaintiff's additional allegations of fraud, corruption, and other errors in the Orphans' Court proceedings, *see* ECF No. 10 at 29–39, are not properly before this Court. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006) ("the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court . . ."); *Turja v. Turja*, 118 F.3d 1006, 1008–09 (4th Cir. 1997) (finding district court properly refused to exercise jurisdiction based on probate exception).

abstention to particular state civil proceedings that are akin to criminal prosecutions." *Sprint*, 134

S. Ct. at 588; *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 594 (1975) (holding *Younger* abstention

warranted where civil litigant challenged constitutionality of on-going state proceeding to

enforce obscenity laws). The doctrine has also been extended to a third category of state civil

proceedings which "implicate a State's interest in enforcing the orders and judgments of its

courts." *Sprint*, 134 S. Ct. at 588; *see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 2 (1987) (holding

*Younger* abstention warranted where debtor who lost at trial challenged constitutionality of state

court requirement for posting bond post-judgment but pending appeal); *Juidice v. Vail*, 430 U.S.

327 (1977) (holding *Younger* abstention warranted where civil litigant challenged state court's

civil contempt processes).

The Supreme Court has made clear, however, that "only exceptional circumstances . . .

justify a federal court's refusal to decide a case in deference to the States." *Sprint*, 134 S. Ct. at

591. This principle is consistent with the mandate that "federal courts have a strict duty to

exercise the jurisdiction that is conferred upon them by Congress." *Martin v. Stewart*, 499 F.3d

360, 363 (4th Cir. 2007). Those three "exceptional circumstances" include (1) ongoing state

criminal prosecutions, (2) certain civil enforcement proceedings, and (3) "civil proceedings

involving certain orders that are uniquely in furtherance of the state courts' ability to perform

their judicial functions." *Sprint*, 134 S. Ct. at 588 (citing *New Orleans Pub. Serv., Inc. v.

Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

In determining whether *Younger* abstention is appropriate, the court also considers

whether there is: "(1) an ongoing state judicial proceeding, instituted prior to any substantial

progress in the federal proceeding; that (2) implicates important, substantial, or vital state

interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal

11

constitutional claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008); *see Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (describing the three "*Middlesex* conditions"). The Supreme Court cautioned in *Sprint* that the *Middlesex* factors are not dispositive, but rather "*additional* factors" appropriately considered by a federal court before invoking *Younger*. *Sprint*, 134 S. Ct. at 587 (emphasis in original). The Court explained:

> Divorced from their quasi-criminal context, the three *Middlesex* conditions [*supra*] would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule."

*Sprint*, 134 S. Ct. at 588.

With these principles in mind, the Court turns to Defendant's argument that *Younger* abstention is warranted in the instant case. The underlying state proceeding is neither a criminal prosecution nor a quasi-criminal enforcement proceeding. Thus the question becomes whether Plaintiff's challenge of the prejudgment attachment statute would require this Court to interfere with "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." It does not. Ultimately, the prejudgment attachment statute operates to protect the private litigants, not to further the state court's ability to perform its judicial function. Unlike *Pennzoil*, prejudgment attachment does not function to enforce a judgment or a verdict. *Pennzoil*, 481 U.S. 1. The prejudgment attachment statute is not central to the state court case here, in which Special Administrator Boynton brings suit against the Parikhs for fraud, negligence, accounting, conspiracy, and other counts. The State of Maryland is not a party to that action. Moreover, it is unclear what important interest, if any, the

12

State of Maryland would have in the on-going state proceeding. In *Shaumyan v. O'Neill*, 716 F. Supp. 65, 68 (D. Conn. 1989), the court declined to apply *Younger* abstention in a similar challenge to a prejudgment attachment statute. The court reasoned:

> [I]nvocation of the prejudgment relief authorized by section 52–278e(a)(1) does not implicate interests that are vital to the operation of state government. The defendants in this federal forum employed the *ex parte* attachment procedure to secure assets of the plaintiffs on claims that may or may not result favorably for the defendants. Moreover, the attachments were ancillary to the underlying breach of contract claims. The court is hard pressed to identify the vital state interests present in relatively simple creditor/debtor disputes involving private parties. In the case at bar, the plaintiffs have invoked federal jurisdiction under a civil rights act to prevent the federal defendants from utilizing a state statute in a manner that allegedly violates constitutional rights.

While it may be true that Plaintiff has an opportunity to raise his constitutional challenges in state court, the Court is mindful that federal court abstention remains the exception, not the rule — and no exceptional circumstances warranting *Younger* abstention are present here.

### C. Due Process

Having determined that neither the *Rooker-Feldman* or *Younger* abstention doctrines require dismissal, the Court will address the merits of Plaintiff's constitutional challenge. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process, as compared with substantive due process, "ensures a fair process before the government may deprive a person of life, liberty, or property, but does not require certain results." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (internal citations omitted). The Court evaluates a procedural due process claim under the balancing standard articulated in *Mathews v. Eldridge. D.B. v. Cardall*, 826 F.3d 721, 742 (4th Cir. 2016) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). As applied here, the *Mathews* framework

13

consists of three factors: (1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with or without additional procedural safeguards, and (3) the interest of the party "seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." *Connecticut v. Doehr*, 501 U.S. 1, 11 (1991) (citing *Mathews*, 424 U.S. at 334–35)).

### i. Supreme Court precedent

In a series of cases between 1969 and 1974, the Supreme Court considered the constitutionality of a variety of state court prejudgment remedies. *See Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969); *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600 (1974); *N. Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975). The Court later considered a fifth case in *Connecticut v. Doehr*, 501 U.S. 1 (1991). In *Sniadach*, the Court struck down a Wisconsin statute that permitted the prejudgment garnishment of wages without prior notice or a hearing. The statute allowed a creditor's lawyer to simply petition the clerk of the court to issue summons and freeze the defendant's wages. *Sniadach*, 395 U.S. at 338–39. No "extraordinary circumstances" were required. *Id.* at 339. In striking down the statute, the Supreme Court noted that wages are "a specialized type of property presenting distinct problems in our economic system," and while "[t]he leverage of the creditor on the wage earner is enormous," the garnishment of wages "is a taking which may impose tremendous hardship on wage earners with families to support." *Id.* at 340–41. The Court held that the procedures violated "fundamental principles of due process." *Id.* at 342.

Three years later in *Fuentes*, the Supreme Court invalidated Florida and Pennsylvania prejudgment replevin statutes, also on due process grounds. *Fuentes v. Shevin*, 407 U.S. 67

(1972). Under the statutes, sellers could repossess goods from buyers without judicial order, approval, or participation. *See Fuentes*, 407 U.S. at 71. A writ of replevin was utilized, but the writ was issued by the court clerk rather than a judge. *Id.* The party seeking the writ was not required to formally allege ownership or entitlement over the property, but rather, was only required to file an affidavit stating the property's value. Neither statute provided for notice or opportunity for the possessor to challenge the seizure at any kind of pre-deprivation hearing. *Id.* at 70. Effectively, both statutes allowed "state agents to seize a person's possessions simply upon the ex parte application of any other person who claims a right to them and posts a security bond." *Id.* at 69–70. The Court recognized that "[t]here are extraordinary situations that justify postponing notice and opportunity for a hearing. . . . [but] [t]hese situations . . . must be truly unusual." *Fuentes*, 407 U.S. at 90 (internal citations omitted).

In *Mitchell*, however, the Court upheld a Louisiana sequestration statute, which allowed a lien holder to seek an *ex parte* writ of sequestration to forestall waste or alienation of encumbered property. *Mitchell*, 416 U.S. at 600. The writ was obtainable only upon a "verified affidavit and upon a judge's authority . . . after the creditor has filed a sufficient bond." *Id.* While the affected debtor was not afforded notice or an opportunity for a hearing prior to issuance of the writ, the debtor could immediately seek dissolution of the writ. *Id.* at 606. The debtor could also file a substitute bond to gain interim possession of the property. *Id.* at 607. If the creditor failed to prove the grounds for issuance, the court was empowered to return the property and assess damages. *Id.* The Supreme Court upheld the constitutionality of the Louisiana statute, reasoning that "considering the procedure as a whole, it effects a constitutional accommodation of the respective interests of the buyer and seller by providing for judicial control of the process

from beginning to end. . . [and] protecting the debtor's interest in every way except to allow him initial possession . . ." *Mitchell*, 416 U.S. at 600.

In *Di-Chem*, the Supreme Court invalidated a Georgia statute that permitted a creditor to garnish property after obtaining an *ex parte* writ issued by a court clerk. The writ could be issued upon an affidavit of only conclusory allegations, and the defendant's sole method for dissolving the garnishment was filing a bond. *Di-Chem, Inc.*, 419 U.S. 607. There was no judicial oversight, *id.* at 606, nor was there was a provision for an early hearing once a garnishment had taken effect. *Id.* The Supreme Court found the Georgia statute "vulnerable for the same reasons" as the Florida and Pennsylvania statutes, and that it had none of the "saving characteristics" of the Louisiana statute upheld in *Mitchell. Id.* at 606–07.

Finally, in *Doehr*, the Supreme Court struck down a Connecticut statute that authorized the prejudgment attachment of real estate without prior notice or a hearing, and without a showing of exigent circumstances. In that case, a plaintiff brought an action against defendant for assault and battery, and applied to the court for an attachment of defendant's home. Using the *Mathews* balancing test, the Court concluded that the interests of the plaintiff, who was seeking the prejudgment remedy, was "too minimal to supply such a consideration here. . . . His only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action." *Doehr*, 501 U.S. at 16. The Court continued that "there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action . . . that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an exigent circumstance . . ." *Id.* The Court also noted that while "disputes between debtors and creditors more readily lend themselves to

accurate *ex parte* assessments of the merits," as in *Mitchell*, "[t]ort actions, like the assault and battery claim at issue here, do not." *Id.* at 17.

### ii. Present Case

The Court begins its application of the *Mathews* factors with the "truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances . . . [it] is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal citations omitted). The private interest affected by the prejudgment attachment of the Parikhs' bank accounts is undoubtedly substantial. As the Supreme Court has squarely held, "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991). In this case, $1,140,000 in funds were seized from the bank accounts of Plaintiff and his ex-wife. Such an action completely deprived Plaintiff of the ability to use these funds in any way. Compared with an attachment of real estate, where an owner typically is not physically dispossessed of the property, the seizing of wages and bank accounts completely deprives the owner of the full use and enjoyment of those funds. *See Shaumyan v. O'Neill*, 716 F. Supp. 65, 79 (D. Conn. 1989). Thus, the first factor of *Mathews* weighs in Plaintiff's favor.

Upon careful consideration of the risk of erroneous deprivation, however, the Maryland statute is not vulnerable to constitutional attack, as were the statutes in *Sniadach*, *Fuentes*, *Di-Chem*, or *Doehr*, and it bears many of the saving characteristics of *Mitchell*. First, unlike *Sniadach*, *Fuentes* and *Di-Chem*, the Maryland prejudgment statute requires judicial oversight. A clerk does not issue the order of attachment; that decision is reserved for a judge.[6] The affidavit

---

[6] This jurisdiction has had occasion to review predecessors to the current Maryland prejudgment attachment statute in *Roscoe v. Butler*, 367 F. Supp. 574 (D. Md. 1973) and *Cameco Indus., Inc. v. Mayatrac, S.A.*, 789 F. Supp. 200

required of the plaintiff must "verify the facts set forth in the complaint" and "state the grounds for entitlement to the writ." *See* Md. Rule 2-115(a). The court "shall review the complaint, any exhibits, and the supporting affidavit." Rule 2-115(c). "If the court determines that the plaintiff is entitled to the writ of attachment, it shall order the issuance of the writ conditioned on the filing of a bond by the plaintiff for the satisfaction of all costs and damages that may be awarded the defendant or claimant . . ." *Id.*[7] The statute also provides notice procedures: "Upon entry of the order and the filing of the bond, the clerk shall issue one or more writs of attachment and shall attach to each writ a copy of the supporting affidavit filed with the request," Rule 2-115(d), and "[i]f the request for the writ of attachment accompanies the complaint, the clerk shall issue a summons pursuant to Rule 2-112 upon the filing of the complaint." Rule 2-115(e).

It is true that the writs may be issued upon an *ex parte* request, and that no prior notice to the defendant or pre-deprivation hearing is required by the statute. However, under Rule 115(g), a defendant "may obtain release of the attached property by posting a bond in an amount equal to the value of the property, as determined by the court . . ." Additionally, the statute provides for a variety of ways to seek release of the property via motion:

> Upon motion of a defendant who has appeared, the court may release some or all of the attached property if it finds that (1) the complaint has been dismissed or settled, (2) the plaintiff has failed to comply with the provisions of this Rule or an order of court regarding these proceedings, (3) the plaintiff fails to demonstrate the probability of success on the merits, (4) property of sufficient value to satisfy the claim and probable costs will remain subject to the attachment after the release, or (5) the attachment of the specific property will cause undue hardship to the defendant and the defendant has delivered to the sheriff or made available for

---

(D. Md. 1992). In *Roscoe*, the court held that the statute "failed to satisfy the requirements of due process" because a court clerk issued the writs of attachment rather than a state official "invested with sufficient authority." 367 F. Supp. at 581–82. *Cameco* did not squarely address the constitutionality of the statute, but found the attachment process unconstitutional as-applied to the facts of that case. 789 F. Supp. at 204–05.

[7] Even if the bond requirement is waived, as it was here, Rule 2-115(j) provides that the state court, upon judgment for the defendant, "shall then assess and enter judgment for any damages sustained by the defendant by reason of the attachment." Md. Rule 2-115(j).

> levy alternative property sufficient in value to satisfy the claim and
> probable costs.

Rule 2-115(g). Thus, the defendant is afforded the opportunity to seek a post-deprivation

hearing, and such a hearing "shall be held promptly." Rule 2-115(g). Due process has never

required a pre-deprivation hearing in every case; rather due process merely guarantees "an

*opportunity* granted at a meaningful time and in a meaningful manner for a hearing appropriate

to the nature of the case." *Daniels v. Williams*, 720 F.2d 792, 798 (4th Cir. 1983) (internal

citations omitted) (emphasis in original); *see also Reigh v. Schleigh*, 784 F.2d 1191, 1198 (4th

Cir. 1986) (noting that "federal courts should be loath both on grounds of comity and federalism

to intrude upon the rule-making functions of state courts" and finding due process satisfied by a

requirement of a "prompt" or "expeditious" hearing). Just as in *Mitchell*, where defendant

received no prior notice or hearing, but was able to immediately seek dissolution of the writ, the

Maryland prejudgment attachment statute offers defendants adequate procedural safeguards.

Further, Maryland law provides for specific instances in which an attachment before

judgment may issue. Md. Code, Cts. & Jud. Proc. § 3-303. Among these include "[i]f the debtor

is about to assign, dispose of, conceal, or remove his property or a portion of it from the State

with intent to defraud his creditors . . ." § 3-303(e).[8] Such a showing has been recognized as an

---

[8] Plaintiff has made much of Md. Code, Cts. & Jud. Proc. § 3-304, which states that "[a]n attachment under § 3-303(c), (e), and (f) of this subtitle may issue only in an action based on contract for liquidated damages." Another court in this jurisdiction recently had occasion to address this issue. *Allen Corp. of Am. v. Zayas*, No. CIV.A. TDC-14-3719, 2014 WL 6893868 (D. Md. Dec. 4, 2014). The court in *Allen Corp.* wrote: "Generally, attachment under § 3-303(e) is limited to actions based on a contract for liquidated damages. § 3-303(b). However, in *Levitt v. State of Md. Deposit Ins. Fund Corp.*, 505 A.2d 140 (Md. Ct. Spec. App. 1986), the Court of Special Appeals of Maryland made an exception, explaining that although 'neither equity nor fundamental fairness will allow the prejudgment attachment of an alleged debtor's assets merely because a complaint asserts that the debtor has perpetuated a fraud,' there are 'extraordinary situations not covered by Cts. & Jud. Proc. Art. § 3-303 in which precisely that kind of precautionary action is not only desirable, but necessary.' *Id.* at 146. The court therefore held that 'when fraud is alleged and the facts as pleaded indicate a substantial likelihood of fraud, as well as the probability that the defendants will, before judgment, dispose of assets fraudulently acquired, a court has jurisdiction to enjoin the defendants' dissipation of assets.'" *Id.* at *2. In the motion for attachment before judgment before the state court, Boynton made specific factual representations showing a substantial likelihood of fraud. Thus, that the underlying

"exigent circumstance." *See Connecticut v. Doehr*, 501 U.S. 1, 16 (1991). Thus, the Maryland statute does not suffer from the same infirmities as the *Doehr* statute or the Washington statute at issue in *Tri-State Dev., Ltd. v. Johnston*, 160 F.3d 528, 531 (9th Cir. 1998) (striking down prejudgment attachment statute that did not require exigent circumstances). The plaintiff seeking the attachment must allege that the defendant is about to conceal or dispose of the property, or another statutorily defined instance, to show entitlement to the writ. *See* § 3-303. The second factor of *Mathews* thus counsels in favor of the State.

The third factor takes into consideration the "interest of the party seeking the prejudgment remedy . . . [and] any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." *Doehr*, 501 U.S. at 11. Here, the interest of Special Administrator Boynton is necessarily the interests of the trustee beneficiaries of the Estate of Dinesh Parikh, which include the decedent's three grandchildren; intestate heirs in the event the Last Will and Testament are set aside; the decedent's widow who may be entitled to a spousal share; and the State of Maryland, which would be entitled to an inheritance tax if the funds of the Estate are passed along. *See* ECF No. 5-3 at 4. The interests of these parties, especially in light of the allegation that the monies were being wrongfully redirected, are substantial. *Compare Whelan v. Pascale*, No. 13-CV-6998 JFB AKT, 2014 WL 4638851, at *5 (E.D.N.Y. Sept. 16, 2014), *aff'd*, 610 F. App'x 19 (2d Cir. 2015) (reasoning that claimant and state had substantial interest in statute which protected court's power over property at issue, "which could be frustrated by a transfer or encumbrance") *with Leslie v. Lacy*, 91 F. Supp. 2d 1182, 1192 (S.D. Ohio 2000) (noting that "there was no evidence in this case that

---

action was not a contractual dispute for liquidated damages is of no moment, nor is it relevant to the Court's determination of the constitutional due process at issue.

plaintiff intended or attempted to move or destroy her manufactured home"). Additionally, the Court notes that the public interest would not be greatly served by the extra time and resources needed to add additional safeguards to this process. *See Whelan*, No. 13-CV-6998 JFB AKT, 2014 WL 4638851, at *6 (citing *Mathews*, 424 U.S. at 348) ("At some point the benefit of an additional safeguard . . . to society in terms of increased assurance that the action is just, may be outweighed by the cost"). The third factor also weighs in favor of the State; and on balance, the prejudgment statute passes constitutional muster.[9]

Finally, to the extent Plaintiff asserts an "as-applied" challenge to the prejudgment attachment statute, his claim similarly fails. Plaintiff does not allege facts sufficient "to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that his due process rights were violated — as it appears neither that the State deviated from the initial prejudgment attachment procedures in his case, nor that Plaintiff attempted to avail himself of the statutory post-attachment procedures to contest and potentially dissolve the attachment. Moreover, to collaterally attack the state court proceedings in federal court would likely run afoul of principles of abstention discussed *supra*. Plaintiff can, and should, utilize the appropriate state court and administrative channels to defend against the *Boynton* action and raise any counterclaims related to this matter.

---

[9] Plaintiff takes language from *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017), the recent Ninth Circuit decision upholding the temporary restraining order against the Executive Order travel ban, out of context to support the proposition that Defendant Frosh is making "an apparent U-turn" from "recent political posturing." *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) ("The Government may not deprive a person of one of these protected interests without providing 'notice and an opportunity to respond,' or, in other words, the opportunity to present reasons not to proceed with the deprivation and have them considered."). The language in *Washington* is not at odds with Defendant's position or the decision reached here. As the Court has explained, due process is an inherently flexible concept, and calls for certain procedural protections as the situation demands. Due process has never required a pre-deprivation hearing in every instance, but rather, guarantees a meaningful opportunity to be heard. Plaintiff is afforded that here.

### D. Fourth Amendment

Plaintiff also challenges the State action under the Fourth Amendment. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . ." U.S. Const. amend. IV. Protections of the Fourth Amendment extend to all government invasions of persons and their property, not merely those that are criminal in nature. *See Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 530 (1967) ("It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior"). The "basic purpose of this Amendment" is to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Id.* at 529. Nothing in the text of the Amendment suggests, however, that a warrant is required for every seizure, nor is "the existence of a warrant a *sine qua non* for a reasonable search or seizure." *Freeman v. City of Dallas*, 242 F.3d 642, 648 (5th Cir. 2001). The "ultimate touchstone of the Fourth Amendment is reasonableness." *Brigham City, Utah v. Stuart.* 547 U.S. 398, 403 (2006).

A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (citing *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). Contrary to Defendant's assertion that "the State of Maryland's prejudgment attachment procedures are not seizures in the Fourth Amendment sense," the freezing and seizing of bank accounts constitute meaningful interference with the owner's possessory interest in that property. *See Hamrick v. Ashland Fin. Co. of W. Virginia*, 423 F. Supp. 1033, 1036 (S.D.W. Va. 1976) (holding "Fourth Amendment to be specifically applicable to prejudgment seizure statutes"); *Laprease v. Raymours Furniture*

*Co.*, 315 F. Supp. 716, 722 (N.D.N.Y. 1970) (noting that "the argument that the Fourth Amendment does not apply [to replevin actions], is supported by neither good sense nor law."). Thus, the protections of the Fourth Amendment apply.

As stated above, however, the Fourth Amendment protects only against *unreasonable* searches and seizures. Here, the seizure of Plaintiff's bank accounts took place only after a neutral judicial officer made an independent determination of the facts presented in a verified affidavit. Indeed, the issuance of the writ of attachment followed procedures analogous to the issuance of a warrant. In *Freeman*, 242 F.3d 642 (5th Cir. 2001), the court held that the City of Dallas Urban Rehabilitation Standards Board's ("USRB") mechanism for identifying buildings for non-compliance with city ordinances and recommending demolition did not run afoul of the Fourth Amendment, because even though the USRB did not act pursuant to a warrant, the USRB performed the constitutionally necessary adjudicative function by providing notice and opportunity for a hearing. *Freeman v. City of Dallas*, 242 F.3d 642, 651 (5th Cir. 2001). The *Freeman* court reasoned that "[w]hat is sought by these plaintiffs is not protection against an unregulated search for evidence of wrongdoing, but additional protection to forestall the result of *already-determined* wrongdoing." *Id.* at 651 (emphasis added). Further, "[t]he property owners' right to defend the case against their apartment buildings was procedurally secure." *Id.* Similarly here, although the Plaintiff's bank accounts were not seized pursuant to a warrant *per se*, they were frozen under a writ of attachment, which had been obtained through procedurally secure means. Thus, while the issuance of such a writ may be unreasonable in a particular case, the prejudgment attachment statute itself does not violate the Fourth Amendment.

### E. Plaintiff's Motion for Leave to File Surreply and Plaintiff's Motion for a Preliminary Injunction.

Loc. R. 105.2(a) provides that "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed. Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (internal citations omitted). Plaintiff has not demonstrated why he would be unable to contest the matters presented in his prior Opposition, ECF No. 10. Moreover, the Court has reviewed the submission, ECF No. 12, and finds that its contents are mainly redundant and do not alter the outcome stated herein. The Motion for Leave to File a Surreply is thus denied.

The grant of a temporary restraining order or a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dewhurst v. Cnty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)) (internal quotation marks omitted). Plaintiff must meet four requirements before being granted a temporary restraining order:

> (1) there is a likelihood of success on the merits; (2) there is a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in movant's favor; and (4) the injunction is in the public interest.

*The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Winter*, 555 U.S. at 20). Because Plaintiff has not shown that he is likely to be successful on the merits with respect to his constitutional claims, as discussed above, the motion for a preliminary injunction is denied.

24

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted, Plaintiff's Motion

for Leave to File Surreply is denied, and Plaintiff's Motion for a Preliminary Injunction is

denied. A separate Order shall issue.

Date: September /5, 2017

GEORGE J. HAZEL
United States District Judge

25